KAUFMAN IRON AND METAL COMPANY, Plaintiff-Appellee, v. PENNSYLVANIA RAILROAD COMPANY, Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24720. Decided April 16, 1959.

Simon & Goldsmith, for plaintiff-appellee.
Squire, Sanders & Dempsey, for defendant-appellant.

**OPINION**

By SKEEL, J.

This appeal comes to this court on questions of law from a judgment entered by the court in the Court of Common Pleas of Cuyahoga County for the plaintiff, the parties having waived the right to trial by jury. The action is on alleged breach of contract.

The plaintiff, a scrap iron dealer, shipped thirty-one cars of scrap iron from a point in Cleveland to the river front terminal of the Baltimore and Ohio Railroad Company in Cleveland to be delivered at dockside to the S. S. Elba. The shipment was by contract of carriage with Luria Brothers. The contents of the thirty-one cars was delivered by the defendant at its destination and lowered into the hold of the Elba and there mixed with other scrap iron for delivery to the Bethlehem Steel Corporation in Buffalo, New York. The contracts of shipment consisted of four uniform "straight" bills of lading in which Luria Brothers was named both as consignor and consignee. Each of the bills of lading, when delivered to the defendant, did not indicate the weight of the scrap iron in each car which weight would be necessary to establish the freightage. Each of the bills, however, had typewritten thereon a notation, "to be weighed." The defendant weighed the cars during the course of transit and noted the weight on the bills and the car cards. The shipment then proceeded to its destination and was disposed of as indicated.

It is the claim of the plaintiff, as shown by its petition in four causes of action, that the defendant's scales were out of order and showed the weight of each car as considerably less, about ten per cent, than was actually true. The plaintiff then alleges that the weight was put on the four bills of lading and furnished to it by the defendant and was used by it to bill the purchaser of the scrap iron and this action seeks to recover the difference between the amount the plaintiff received for the shipment, as thus billed, and the amount that would have been received had the defendant's scales been accurate.

The defendant claims the following errors:

"1. The findings and judgment of the trial court are contrary to the law and the evidence.

"2. The judgment of the trial court is excessive in that no damages were proved."

The rights of the parties in this action are completely controlled by the terms of the bills of lading. The defendant, a common carrier, is circumscribed in its relation with shippers by the regulations imposed upon it by law. The bills of lading describing the shipment in four groups of cars, totaling thirty-one cars in all, constituted not only a receipt for the goods but also the contract of carriage. The terms of the contract cannot be other than in conformity with the regulations imposed upon the defendant by the Interstate Commerce Commission as to interstate shipments, or The Public Utilities Commission of Ohio, in intrastate shipments.

The contract (bills of lading) presented in this case, show that the cars loaded with scrap iron and delivered to the defendant, were "to be weighed." The plaintiff, not having the means of weighing carload

lots, and it being necessary to determine the weight to figure the freightage, the defendant was required to perform this service as an incident to, and for the purpose of carrying out the contract of carriage. There was no charge for this service nor could there be because of the tariff regulations then in force, the contract of carriage being with regard to an original transportation agreement.

The bill of lading used in these shipments had printed over the column in which the weights were to be recorded (after weighing) and headed "weight," the words "subject to correction." These words are not ambiguous and clearly modified any right to a claim that the weights set forth are final as to the rights of the parties based thereon or their right to rely thereon for other purposes aside from and beyond the contract of carriage between the parties, if there be any legal obligation under the latter circumstance.

We find that the first claim of error is well taken. While there is some evidence that the plaintiff and some other scrap iron dealers have on occasions depended on the weights ascertained by a carrier and recorded on the bill of lading under its contract of carriage (a service required of it by law in an original shipment, for the purpose of computing freightage), for billing purposes, such fact creates no obligation on the part of the carrier resulting from such use of weight information even if the weights ascertained are erroneous because of defective scales. The weight information here under consideration was entirely incident to the contract of carriage and for which the freightage paid for the shipment was the entire consideration. Here there is no ambiguity in the contract. The weights were tentative as provided by the bill of lading. That this fact was clearly understood is supported by the undisputed evidence that when cars of scrap are delivered directly to a steel manufacturer, the manufacturer pays the seller only seventy-five per cent of the billed weights and holds the balance until the car is weighed by them. The only reason that procedure was not followed here is because plaintiff mixed these carload lots with other scrap in the hold of the "Elba." Also by the further fact that the freightage due on the shipment is to be determined by the true weight and the defendant would not be estopped from demanding the full amount due under the tariff rgardless of the mistake in weights caused by its defective scales.

A contract which is clear and not ambiguous cannot be modified by a custom, even where a custom is otherwise recognized by the parties and is such as imposes a legal obligation. In **O. Jur., Vol. 40**, under the title "Usages and Customs," **page 781, paragraph 19**, it is said:

"In other words, usage may be admissible to explain what is doubtful, but never to contradict what is plain."

The plaintiff here seeks to extend the defendant's responsibility completely outside its contract for alleged results completely disassociated with the carriage of the goods. We find no legal justification for such a claim.

For the foregoing reasons, the judgment is reversed and final judgment is entered for the defendant.

HURD, PJ, KOVACHY, J, concur.